# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN THOMPSON, | ) |
|    Plaintiff, | ) |
| v. | ) Case No. CIV-19-1039-SM |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Justin Thompson (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 9, 13.

Plaintiff challenges the ALJ's consideration of his mental limitations. *See* Doc. 14. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court reverses the Commissioner's decision and remands for further administrative development. *See* 42 U.S.C. § 405(g).[1]

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

I. **Administrative determination.**

　A. **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

　B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes such prima facie showing, the burden of proof then shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 15-26; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity during the period from his alleged onset date of May 15, 2013, through his date last insured of December 31, 2017;

(2) had severe medically determinable impairments of degenerative disc disease, status post lumbar fusion, degenerative joint disease, and status post right shoulder arthroscopy; as well as the non-severe impairment of depressive disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the physical residual functional capacity (RFC)[2] to perform light work as defined in 20 C.F.R. § 404.1567(b), except he was able to occasionally stoop and perform occasional overhead reaching with his upper right extremity;

(5) was capable of performing his past relevant work as a carpenter labor supervisor as that work is generally performed in the economy; and thus

---

[2]   RFC "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

>   (6) had not been under a disability from May 15, 2013, the alleged onset date, through December 31, 2017, the date last insured.

*See* AR 17-25.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The court will "neither

4

reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issues for judicial review.

Plaintiff asserts the ALJ failed to properly consider the opinions of the State agency psychologists regarding Plaintiff's mental health. Doc. 14, at 3-9. The court agrees.

### C. Analysis.

Plaintiff argues the ALJ erred considering medical evidence relevant to Plaintiff's mental impairment at step four of the sequential evaluation. *Id.* At step two of the evaluation, the ALJ considered and discussed Plaintiff's mental impairment of depression. AR 17-19. The ALJ ultimately found Plaintiff's medically determinable mental impairment caused no more than mild limitation in any of the four function areas, concluding that Plaintiff's mental impairment was non-severe. *Id.*; *see also* 20 C.F.R. § 1520a (discussing evaluation of severity of mental impairments).

Though the ALJ found Plaintiff's mental impairment to be non-severe, he was still required to consider its effects in formulating the RFC at step four. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not*

5

*severe.*"); *accord* 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). And in considering the effects of a non-severe impairment, the ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d. at 1065; *see also* SSR 96-8p, 1996 WL 374184, at *4 (noting that criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment"). Additionally and "most importantly," "the ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).

Though the ALJ discussed Plaintiff's depression at step four, it is questionable whether the discussion meets the Tenth Circuit's standard. *See* AR 22-24. After reviewing some medical evidence, Plaintiff's hearing testimony, and Plaintiff's function report, the ALJ concluded that his decision "reflects no severe mental impairment." *Id.* at 24. Severity or non-severity, however, is not the required analysis at step four; rather the analysis is whether the effect of Plaintiff's depression, in combination with Plaintiff's

other medically determinable impairments, mandates the inclusion of limitations in Plaintiff's RFC. The ALJ found Plaintiff's mental impairment imposed mild limitations in each of the four broad areas of mental functioning, *Id.* at 18-19, yet his discussion of functional limitations includes only references to physical impairments and limitations:

> Based on the foregoing, it is found that [the RFC] assessment is supported by [Plaintiff's] progressively improved back and right shoulder impairments with generally intact physical examination and clinical findings. Functional deficits related to the combination of [Plaintiff's] musculoskeletal and arthritic complaints are accommodated with the stated exertional, postural, and manipulative limitations. The combined effects of [Plaintiff's] impairments as reflected in persistent reports of pain support a finding that [Plaintiff] is limited to a reduced light exertional level as outlined above. In short, the evidence prior to the date last insured shows [Plaintiff's] impairments could have precluded him from performing very heavy, heavy, and medium exertional work activity. However, the evidence of record in its entirety supports the finding that [Plaintiff] was able to perform a wide range of sedentary and light work as described in the [RFC].

*Id.* at 24-25.

But the court need not determine whether the ALJ's step-four discussion of Plaintiff's depression fulfilled his duty to determine Plaintiff's mental RFC because the specific conclusion the ALJ reached was unsupported by substantial evidence and, therefore, reversal is required. *See Wells*, 727 F.3d at 1069 (recognizing the ALJ's limited step-four discussion might have been adequate but reversing because such discussion was not supported by

substantial evidence). Specifically, the ALJ's discussion of medical evidence relevant to Plaintiff's mental health impairment is both incomplete and inaccurate.

Concerning Plaintiff's mental health, the ALJ stated "[t]here is scant evidence prior to the date last insured regarding outpatient mental health care with largely unremarkable findings on serial examinations." AR 22. The ALJ discussed only four treatment records:

> On September 9, 2016, [Plaintiff] presented at OK Families First, stating he would like to learn coping skills and how to be less irritable. He presented as fully oriented, calm, cooperative, and with normal affect. His thought processes were normal and his memory was intact. Despite normal clinical findings, he was assessed with a major depressive disorder, single episode. He was not prescribed medication. In follow up on April 4, 2017, he related he had difficulty communicating with his children. When seen by his primary care provider on May 10, 2017, he stated he was feeling depressed about his family life and inability to work and was prescribed psychotropic medication. As of June 23, 2017, he reported improvement in his depressive symptoms with medication and did not wish to increase his low dosage that he was taking as the same was effective.

*Id.*

The ALJ failed to note OK Families First continued to diagnose Plaintiff with major depressive disorder at his assessments on October 19, 2016, and April 4, 2017. *See id.* at 79, 91. The ALJ further failed to note that his primary care physician, who treated Plaintiff's mental health impairments, diagnosed

Plaintiff with moderate Major Depressive Disorder on May 10, 2017, which diagnosis the primary care physician continued to assess on June 23, 2017; August 23, 2017; October 23, 2017; November 21, 2017; January 2, 2018; and April 2, 2018.[3] *See id.*at 479 (May 10, 2017), 517 (June 23, 2017), 573 (Aug. 23, 2017), 571 (Oct. 23, 2017), 570 (Nov. 21, 2017), 569 (Jan. 2, 2018), 568 (Apr. 2, 2018). Moreover, other than the March 15, 2016 treatment note when Plaintiff established care with his primary care physician, each treatment note reflecting that a psychiatric exam had been conducted shows the results of such exam to include dysthymic and depressed mood. *Compare id.* at 481 (Mar. 15, 2016, mood euthymic), *with id* at 479 (May 10, 2017, mood dysthymic, depressed), 518 (June 23, 2017, mood dysthymic, depressed), 573 (Aug. 23, 2017, mood dysthymic, depressed), 571 (Oct. 23, 2017, mood dysthymic, depressed, one of pain). Additionally, though the ALJ is correct that Plaintiff reported mild improvement of his depressive symptoms on June 23, 2017, the ALJ failed to acknowledge subsequent times Plaintiff reported increased

---

[3] Though January 2, 2018, and April 2, 2018, were after Plaintiff's last date insured, medical records that postdate the insured period may constitute indirect evidence of a plaintiff's condition during the insured period and, therefore, should also be considered. *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of plaintiff's condition during the insured period).

symptoms and/or required adjustment of his mental health medications. *See, e.g., id,* at 572 (Aug. 23, 2017), 570-72 (Oct. 23, 2017). Finally, the ALJ also failed to acknowledge Plaintiff's complaints of anxiety or his primary care physician's diagnoses of and treatment for same. *See id.* at 570-71 (Oct. 23, 2017), 570 (Nov. 21, 2017), 569 (Jan. 2, 2018), 568 (Apr. 2, 2018).

Thus, the ALJ's discussion of medical evidence relevant to Plaintiff's mental health was incomplete. And this deficiency resulted in inaccuracy. In his explanation of why he rejected the findings and assessments of the two State agency psychologists, the ALJ stated they were "not persuasive as they are unsupported by the longitudinal record in its entirety and are inconsistent with the serial mental status findings, treating medical records, function reports, and objective medical evidence that establish no more than mild functional limitation in any domain area." *Id.* at 24. Because the ALJ failed to discuss significant medical evidence evidencing Plaintiff's depression and anxiety, his conclusion is inaccurate and not supported by substantial evidence. *See* SSR 96-8p, 1996 WL 374184, at *7 ("[An ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); *cf. Wells*, 727 F.3d at 1069 (remanding when step-four conclusions were not supported by substantial evidence). While

10

"an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record. . . .").  Here the ALJ's discussion of the medical record "ignored evidence . . . that would support a finding of disability while highlighting evidence favorable to the finding of nondisability," which is error.  *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).  As such, the ALJ's RFC determination was flawed and remand is required.

### III. Conclusion.

Based on the above, the court reverses and remands the Commissioner's decision.

**ENTERED** this 6th day of August, 2020.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE